UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKY FAYE WILLS, | No. 2:13-cv-0255 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On April 1, 2010, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on April 1, 2003. (Transcript ("Tr.") at 14, 108.) Plaintiff's application was denied initially and upon reconsideration. (Id. at 58-62, 64-68.) Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on June 15, 2011. (Id. at 26.) Plaintiff was

1

represented by an attorney and testified at the administrative hearing.  (Id. at 26-27.)  In a decision issued on October 21, 2011, the ALJ found that plaintiff was not disabled.  (Id. at 21.)

The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2008 (20 CFR 404.1571 *et seq.*).
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 1, 2003 through her date last insured of June 30, 2008 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following medically severe combination of impairments:  degenerative disc disease of the lumbar spine with protrusions at L4-5 and L5-S1; inflammation of the bilateral sacroiliac joints; rheumatoid arthritis; hypertension; restless leg syndrome; left tennis elbow; left carpal tunnel syndrome; and essential tremor (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and SSR 83-10 specifically as follows:  the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; but the claimant can only perform frequent, not constant, gross manipulation with the left upper extremity.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a medical assistant.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2003, the alleged onset date, through June 30, 2008, the date last insured (20 CFR 404.1520(f)).

(Id. at 16-21.)

On December 11, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 8, 2013.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

/////

1  The claimant bears the burden of proof in the first four steps of the sequential evaluation
2  process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden
3  if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,
4  1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff argues that the ALJ committed the following three principal errors in finding her not disabled:  (1) the ALJ improperly failed to find plaintiff's fibromyalgia a severe impairment; (2) the ALJ improperly rejected the medical opinion of plaintiff's treating physician; and (3) the ALJ improperly rejected plaintiff's own subjective testimony.

**I.     Severe Impairment**

Plaintiff argues that the ALJ improperly evaluated plaintiff's impairments at step two of the sequential evaluation process and erred by failing to find that plaintiff's fibromyalgia constituted a severe impairment.  (Pl.'s MSJ (Dkt. No. 13-1) at 13-17.[1])

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include:  (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

/////

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28). See also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (a claimant failed to satisfy the step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290). See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff's diagnosis of fibromyalgia was referenced in the evidence of record, first appearing in medical treatment notes sometime in 2006[2], and was also noted in Dr. Albert Ferrari's February 18, 2009 report after an orthopedic spine consultation (Tr. at 194), in Dr. Gary Alegre's April 23, 2009 progress note (id. at 192), in a September 1, 2010 functional capacity evaluation completed by plaintiff's physical therapist (id. at 273), and in Dr. Meherji A. Oshtory's June 1, 2011 neurological evaluation report. (Id. at 396). Plaintiff also referred to her fibromyalgia in her testimony before the ALJ at the administrative hearing. (Id. at 52.) Despite

---

[2] As noted by plaintiff's counsel, deciphering the notations found in the treatment notes from plaintiff's treating physician is quite challenging, primarily due to the author's penmanship. Accordingly, the court has refrained from citing to the individual treatment notes. Nonetheless, many of those notes appear to contain reference to "FM" or fibromyalgia.

1  this evidence, the ALJ's opinion is devoid of any mention of plaintiff's fibromyalgia at step two
2  of the sequential evaluation.  Indeed, the ALJ refers to plaintiff's fibromyalgia only once in the
3  entire opinion.  In this regard, in finding that plaintiff had the residual functional capacity
4  ("RFC") to perform a wide range of light work, the ALJ noted that "Dr. Oshtory's diagnoses
5  included . . . fibromyalgia . . . ."  (Tr. at 19.)

6        Under these circumstances the court cannot find that the medical evidence clearly
7  established that plaintiff's fibromyalgia was not a medically severe impairment.  See Philips v.
8  Colvin, No. 1:12-cv-1772-JLT, 2014 WL 791478, at *7-8 (E.D. Cal. Feb. 24, 2014) ("In this case,
9  however, the ALJ failed to discuss Plaintiff's Trigeminal Neuralgia and erroneously discredited
10 her allegations of pain at Step Four, as discussed below.  Even if the evidence does not establish
11 the diagnosed impairment establishes more than 'slight abnormality,' the ALJ erred by failing to
12 identify and evaluate the conditions and its symptoms in combination at Step Two, or consider
13 any limitations at Step Four."); Lopez v. Colvin, No. ED CV 13-1753-DFM, 2014 WL 1370672,
14 at *3 (C.D. Cal. Apr. 7, 2014) ("Because the ALJ completely failed to address whether Plaintiff's
15 lupus was a severe impairment, the Court is unable to determine whether the ALJ's step two
16 determination was free of error and supported by substantial evidence."); Lipinski v. Astrue, No.
17 CV 11-0693-TUC-RCC (JR), 2013 WL 1249226, at *7 (D. Ariz. Mar. 7, 2013) ("The types of
18 claims that are screened-out at step-two are those that allege impairments that are so minimal they
19 could never prevent a person from working.").

20       In light of the ALJ's almost complete failure to reference plaintiff's fibromyalgia at step
21 four or step five of the sequential evaluation, the court cannot say that the ALJ's error was
22 harmless.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding that any error the ALJ
23 committed in failing to list plaintiff's bursitis at step two was harmless, because the ALJ
24 thereafter "extensively discussed" plaintiff's bursitis and "considered any limitations posed by the
25 bursitis at [s]tep 4").

26       Accordingly, the court finds that plaintiff is entitled to summary judgment in her favor
27 with respect to her claim that the ALJ erred by failing to find at step two of the sequential
28 evaluation that plaintiff's fibromyalgia was a severe impairment.

## II. Medical Opinion Evidence

Plaintiff also argues that the ALJ failed to afford the proper weight to the opinion Dr. Albert Ferrari, plaintiff's treating Rheumatologist. (Pl.'s MSJ (Dkt. No. 13-1) at 18.)

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. (Id. at 831.) Finally, greater weight should be given to the "'opinion of a specialist about medical issues related to his or her area of specialty.'" Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)). Although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, on September 7, 2010, Dr. Ferrari completed an Arthritis Residual Functional Capacity Questionnaire in which he indicated that he had been treating plaintiff for ten years and that his diagnoses of her condition included fibromyalgia and degenerative disc disease. (Id. at 276.) The ALJ himself recognized that in completing that questionnaire Dr. Ferrari indicated that as a result of her impairments plaintiff's functional limitations were "significantly greater than

1  those" found by the ALJ.  (Tr. at 19.)

2  Although the ALJ "considered" the questionnaire completed by Dr. Ferrari he did not give
3  "significant weight" to Dr. Ferrari's opinion expressed therein for two asserted reasons.  (Id.)
4  First, the ALJ noted that the questionnaire indicated that plaintiff's exertional, postural, and
5  manipulative abilities were apparently determined by a physical therapist after a functional
6  evaluation requested by Dr. Ferrari.  (Id.)  In this regard, the ALJ noted that a physical therapist is
7  "not an acceptable medical source," and that the opinion of a physical therapist "is not entitled to
8  the same weight as a qualifying medical source opinion."  (Id.) (citation omitted).

9  Although it is true that a physical therapist in not an acceptable medical source, a physical
10 therapist is an "other source" that can properly provide evidence to establish an impairment.  20
11 C.F.R. § 404.1513(d)(1).  See also Garrison v. Colvin, --- F.3d ---, ---, 2014 WL 3397218, at *15
12 (9th Cir. 2014) ("Anderson, as a nurse practitioner, qualified as an 'other source[ ]' that 'can
13 provide evidence to establish an impairment.'"); Dougherty v. Astrue, No. 2:11-cv-0947 GGH,
14 2012 WL 671411, at *6 (E.D. Cal. Feb. 29, 2012) ("Physical therapists . . . qualify as 'other
15 sources' under 20 C.F.R. § 404.1513(d), and their opinions as to functional limitations resulting
16 from an established impairment must be evaluated and can only be discounted by providing
17 specific reasons, germane to the witness."); Social Security Rule 06-03p, 2006 WL 2329939, at
18 *3 ("Opinions from these medical sources, who are not technically deemed 'acceptable medical
19 sources' under our rules, are important and should be evaluated on key issues such as impairment
20 severity and functional effects, along with the other relevant evidence in the file.").

21 The other reason offered by the ALJ was that the limitations indicated by Dr. Ferrari's
22 opinion were not supported by "positive objective, clinical, or diagnostic (sic) from his own
23 treatment records."  (Tr. at 19.)  However, it has been recognized that "[f]ibromyalgia's cause is
24 unknown, there is no cure, and it is poorly-understood within much of the medical community.
25 The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms."
26 Benecke, 379 F.3d at 590.  Fibromyalgia's "symptoms are entirely subjective.  There are no
27 laboratory tests for [its] presence or severity." Jordan v. Northup Grumman Corp. Welfare
28 Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) overruled on other grounds by Abatie v. Alta

1  Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  See also Welch v. UNUM
2  Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004) (fibromyalgia presents conundrum for
3  insurers and courts because no objective test exists for proving the disease, its cause or causes are
4  unknown, and its symptoms are entirely subjective).  Accordingly, "it is error for an ALJ to
5  require objective evidence for a disease that eludes such measurement."  Sharpe v. Colvin, No.
6  CV 13-1557 SS, 2013 WL 6483069, at *4 (C.D. Cal. Dec. 10, 2013) (reversing an ALJ's
7  conclusion that the plaintiff' did not suffer from the severe medically determinable impairment of
8  fibromyalgia).  See also Benecke, 379 F.3d at 594 ("The ALJ erred by effectively requiring
9  objective evidence for a disease that eludes such measurement."); Tully v. Colvin, 943 F.Supp.2d
10 1157, 1167-68 (E.D. Wash. 2013) ("The lack of objective clinical findings in this case of
11 fibromyalgia is insufficient to support the ALJ's rejection of Dr. Stevenson's opinions regarding
12 Plaintiff's functional capacity."); Llamas v. Astrue, No. 1:09-cv-1503 GSA, 2010 WL 5313759,
13 at *9 (E.D. Cal. Dec. 20, 2010) ("Courts have found it error for an ALJ to discount a treating
14 physician's opinion as to resulting limitations due to a lack of objective evidence for
15 fibromyalgia.").

16         Moreover, as noted above, in addition to being plaintiff's treating physician Dr. Ferrari
17 was also a Rheumatologist.  Rheumatology is the relevant specialty for fibromyalgia and the
18 opinion of a rheumatologist is "given greater weight than those of other physicians because it is
19 an 'opinion of a specialist about medical issues related to his or her area of specialty.'"  Benecke,
20 379 F.3d at 595 n.4 (quoting 20 C.F.R. § 404.1527(d)(5)).  See also Contreras v. Astrue, 378 Fed.
21 Appx. 656, 658 (9th Cir. 2010) ("Specialized knowledge is particularly important with respect to
22 a disease such as fibromyalgia, which is poorly understood within much of the medical
23 community.").[3]

24         In light of all of the above, the court finds that the ALJ failed to offer a specific and
25 legitimate reason for his decision to afford Dr. Ferrari's opinion reduced weight.  Accordingly,
26 plaintiff is also entitled to summary judgment in her favor with respect to this claim as well.

27 ───────────────
28 [3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

9

### III. Plaintiff's Testimony

Finally, plaintiff argues that the ALJ improperly rejected plaintiff's own testimony regarding the severity of her subjective symptoms. (Pl.'s MSJ (Dkt. No. 13-1) at 25-26.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

> [claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is

/////

10

supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, with respect to plaintiff's credibility, the ALJ found that plaintiff's strong work history and testimony that she "always thoroughly enjoyed her work" enhanced her credibility. (Tr. at 18.) Nonetheless, the ALJ also found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's own residual functional capacity determination. (Id.) "Most significantly," the ALJ found that plaintiff's credibility was diminished because her "allegations are greater than expected in light of the objective evidence of record."[4] (Id.)

However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of [her] pain." Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). As noted above, it appears that some of plaintiff's impairments may be caused by fibromyalgia, a disease that cannot be measured with objective tests. Accordingly, discrediting plaintiff's subjective testimony based on a lack of objective evidence is especially improper in this instance. See Coleman v. Astrue, 423 Fed. Appx. 754, 755-56 (9th Cir. 2011)[5] ("The ALJ relied on the absence of objective physical symptoms of severe pain as a basis for disbelieving Coleman's testimony regarding her symptoms. He erred insofar as Coleman's pain is related to her fibromyalgia, which is a disease that eludes objective measurement."); Krenz v. Colvin, No. EDCV 13-1899 AN, 2014 WL 2889759, at *3-4 (C.D. Cal. June 25, 2014) ("The ALJ discounted Plaintiff's subjective symptom testimony largely because of a lack of objective evidence or medical findings. However, as discussed above, there are no objective tests that conclusively confirm the disease of fibromyalgia. Thus, requiring objective evidence for a disease that eludes such measurement was inappropriate."); Roots v. Colvin, No. 2:13-cv-1247 AC, 2014 WL 2893193, at *4 (E.D. Cal. June 24, 2014) (where plaintiff suffered from

---

[4] This was, in fact, the only reason offered by the ALJ in discrediting plaintiff's testimony.

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

fibromyalgia "[t]he ALJ accordingly erred in relying on the lack of objective evidence in finding plaintiff not entirely credible"); Guevara v. Colvin, EDCV 11-1257-MAN, 2013 WL 1319752, at *12 (C.D. Cal. Mar. 29, 2013) (ALJ's finding that the objective medical evidence of record did not support plaintiff's asserted limitations was not, by itself, a clear and convincing reason for discrediting plaintiff because "the lack of objective medical evidence is consistent with the nature and symptoms of fibromyalgia").

Accordingly, the court finds that the ALJ's opinion does not offer specific, clear and convincing reasons for rejecting plaintiff's testimony regarding her subjective symptoms and their severity. Accordingly, plaintiff is entitled to summary judgment in her favor with respect to this claim as well.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke, 379 F.3d at 595-96. However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, the court cannot say that no useful purpose would be served by further proceedings. Here, the ALJ erred at step two of the sequential evaluation by failing to address plaintiff's fibromyalgia and later, by impermissibly discrediting both the opinion of plaintiff's treating physician and plaintiff's own subjective testimony. On remand, an ALJ shall evaluate and address plaintiff's fibromyalgia at step two and proceed with the sequential evaluation process. See Vasquez v. Astrue, 572 F.3d 586, 596 (9th Cir. 2009) (remanding for further proceedings where the evidence suggested that plaintiff had severe mental impairment and where that mental impairment was not accounted for in ALJ's RFC determination at step four).

/////

On remand the ALJ shall also afford the proper weight to Dr. Ferrari's September 7, 2010 opinion and to plaintiff's own testimony. Should the ALJ deem it necessary to utilize the expertise of a Vocational Expert, the ALJ's hypothetical question to the Vocational Expert shall account for all of plaintiff's limitations and restrictions.

Therefore, in accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 13) is granted;

2. Defendant's cross-motion for summary judgment (Dkt. No. 19) is denied;

3. The decision of the Commissioner of Social Security is reversed for the reasons indicated above; and

4. This case is remanded for further proceedings consistent with this order.

Dated: August 5, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\wills0255.ord.docx